**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**AMY NICKI STUCKERT**
**Plaintiff**

**CIVIL NO.: 3:23-CV-00148**

**v.**

**LINDE INC. A DELAWARE CORPORATION**
**Defendant**

**MAY 19, 2023**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO TRANSFER VENUE**

JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

BECK & ELDERGILL, P.C.
Marc P. Mercier
447 Center Street
Manchester, CT
860-646-5606

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... i

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  RELEVANT FACTS................................................................................. 2

III. ARGUMENT ........................................................................................... 6

   A.  Defendant Has Failed to Show By Clear and Convincing Evidence
       That Transfer of Venue is Warranted ................................................ 8

       1. Plaintiff's Choice of Forum is Entitled to "Substanital Deference"................................. 8

       2. The Location of Operative Facts and Events Weights Against Transfer......................... 8

       3. The Convenience of the Witnesses Weighs Against Transfer ....................................... 12

       4. The Location of Relevant Documents Weighs Against Transfer ................................. 15

       5. The Convenience of the Parties Weighs Against Transfer ........................................... 17

       6. Defendant Fails to Demonstrate that Any Witnesses Would be Unwilling
          to Testify at Trial Absent a Subpoena............................................................. 17

       7. The Relative Means of the Parties is Neutral................................................... 18

       8. This Court Has Familiarity with the NYSHRL ............................................... 19

   B.  In The Alternative, The Court Should Allow Defendant to Renew
       the Motion After Discovery .............................................................. 19

IV.  CONCLUSION....................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*A Slice of Pie Prods., LLC v. Wayans Bros. Ent.,*
  392 F. Supp. 2d 297 (D. Conn. 2005)................................................................8

*Bates v. C&S Adjusters, Inc.*, 980 F.2d 865 (2d Cir. 1992)..........................................7

*Butcher v. Gerber Prods. Co.,* Case No. 98 Civ. 1819,
  1998 U.S. Dist. LEXIS 11869 (S.D.N.Y. July 29, 1998) .................................11

*Calabrese v. Teoco Corp.,* 637 F. Supp. 2d 160 (E.D.N.Y. 2009) ..............................17

*Castelluccio v. IBM,* Case No. 3:09-CV-1145,
  2012 U.S. Dist. LEXIS 12522 (D. Conn. Aug. 21, 2012) ................................19

*Charles v. Nationwide Mut. Ins. Co.*, No. 09-cv-0094,
  2010 U.S. Dist. LEXIS 165337 (S.D.N.Y. Apr. 1, 2010)................................18

*Costello v. Home Depo U.S.A., Inc.*, 888 F.Supp.2d 258 (D. Conn. 2012) .................19

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)................................7

*Deithier v. Nat'l Liquidators,* Case No. 3:09-CV-1507,
  2010 U.S. Dist. LEXIS 25545 (D. Conn. Mar. 18, 2010)................................9

*Dickerson v. Novartis Corp.*, 315 F.R.D. 18 (S.D.N.Y. 2016) .....................................8

*Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc.*, No. 07-cv-975,
  2007 U.S. Dist. LEXIS 52246 (S.D.N.Y. July 17, 2007) ................................14

*Global Supplies Ny, Inc. v. Electrolux Home Prods., Inc.,* Case No. 19 CV 4823,
  2022 U.S. Dist. LEXIS 190461 (E.D.N.Y. Oct. 18, 2022)...............................20

*Huntley v. Sprout Foods, Inc.*, Case No. 3:21-cv-00488,
  2022 U.S. Dist. LEXIS 7417 (D. Conn. Jan. 14, 2022)....................................7

*In re Grebe Shipping LLC,* 448 F. Supp. 3d 161 (D. Conn. 2020)..............................17, 19

*Inventel Prods. LLC v. Penn LLC,* No. 16-cv-1649,

2017 U.S. Dist. LEXIS 28933 (S.D.N.Y. Feb. 28, 2017) ................................. 16

*Jones v. Walgreen Co.*, 463 F. Supp. 2d 267 (D. Conn. 2006) ..................................... 8, 10, 12

*Kumar v. Opera Solutions OPCO, LLC*, No. 20-cv-6824,
2021 U.S. Dist. LEXIS 185705 (S.D.N.Y. Sept. 28, 2021) ............................. 11

*LEGO A/S v. OYO Toys, Inc.*, Case No. 3:19-cv-1610,
2020 U.S. Dist. LEXIS 126185 (D. Conn. July 17, 2020) ................................ 12

*MAK Marketing, Inc. v. Kalapos*, 620 F. Supp. 2d 295 (D. Conn. 2009) ................... 6

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
599 F.3d 102 (2d Cir. 2010) ................................................................. 6, 7

*Obourn v. Am. Well. Corp.*, Case No. 3:15-CV-48,
2015 U.S. Dist. LEXIS 141622 (D. Conn. Oct. 19, 2015) .............................. 19

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, (1978) .......................................... 20

*Payless Shoesource, Inc. v. Avalon Funding Corp.*,
666 F. Supp. 2d 356 (E.D.N.Y. 2009) ................................................. 13, 15

*Pilevesky v. SunTrust Bank*, No. 10-cv-2290,
2010 U.S. Dist. LEXIS 124308 (E.D.N.Y. Nov. 22, 2010) ............................. 15

*Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003) ............. 7

*Price v. Stossel*, No. 07-cv-11364,
2008 U.S. Dist. LEXIS 45672 (S.D.N.Y. June 4, 2008) ................................. 15

*RegenLab USA LLC v. Estar Techs. Ltd*, Case No. 16-cv-08771,
2017 U.S. Dist. LEXIS 131627 (S.D.N.Y. Aug. 17, 2017) ............................. 20

*Rimler v. Ripple Junction Design Co.*, No. 19-cv-5953,
2020 U.S. Dist. LEXIS 264681 (E.D.N.Y. Jan. 14, 2020) ............................. 8

*Sacco v. Legg Mason Inv. Counsel & Trust Co., N.A.*,
660 F. Supp. 2d 302 (D. Conn. 2009) ................................................... 19

*Saccoccio v. Relin, Goldstein & Crane, LLP*, No. 06-cv-14351,

2007 U.S. Dist. LEXIS 33145 (S.D.N.Y. May 7, 2007)................................. 8

*Sherman v. Moore*, 86 F.R.D. 471 (S.D.N.Y. 1980)...................................... 20

*Travelers Prop. Case. Co. of Am. v. Ocean Reef Charters LLC*,
324 F. Supp. 3d 366 (W.D.N.Y. 2018) ............................................... 18

*Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, No. 22-cv-2538,
2022 U.S. Dist. LEXIS 208985 (S.D.N.Y. Nov. 17, 2022) ............................ 6, 16, 18

**Statutes, Rules, and Regulations**

28 U.S.C. § 1404(a) ........................................................................ *passim*

This Memorandum of Law and the declaration of Plaintiff Amy Nicki Stuckert are respectfully submitted in support of Plaintiff's Opposition to Defendant Linde, Inc's ("Defendant" or "Linde") Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 20).

## I.    PRELIMINARY STATEMENT

Defendant's motion to transfer this case pursuant to 28 U.S.C. § 1404(a) to the Western District of New York should be denied.

Defendant has not met its burden under § 1404(a) and has failed to establish, by clear and convincing evidence, that a transfer is fair and warranted here. Specifically, Defendant cannot overcome the "great weight" placed on Plaintiff's choice to bring her action in the District of Connecticut, which the parties agree has jurisdiction over the claims in this case. Common sense favors venue in this District. Defendant is headquartered in Danbury, Connecticut. The central location of the operative facts in this case – i.e., the HR decisions related to Plaintiff's gender transition and Plaintiff's complaints of discrimination, and Defendant's pretextual investigation of Plaintiff and ultimate decision to terminate her employment – occurred in Connecticut. Furthermore, at least 7 materially significant witnesses live and work in Connecticut. Other factors – such as the location of stored electronic documents, the relative means of the parties, and the ability to subpoena witnesses – are all neutral, and Defendant has not shown that any of the other relevant factors greatly outweigh the factors in favor of keeping this case in this venue. As such Defendant failed to establish by clear and convincing evidence that notions of fairness and convenience require the transfer of this action, and the Court should deny the motion.

1

If the Court, however, believes that further development of the factual record would be beneficial for deciding this motion, the Court should deny the motion now and grant Defendant leave to renew once discovery is fully completed. In the alternative, if the Court is inclined to grant the motion, the Court should order the parties to engage in limited discovery related to venue before ruling.

## II.   RELEVANT FACTS

In this action, Plaintiff Amy Nicki Stuckert asserts claims of discrimination and retaliation against her former employer, Defendant Linde, Inc., whose global headquarters, and principal place of business, are in Danbury, Connecticut. *See* Complaint ¶¶ 9, 60-71 ("Compl.") (Dkt. No. 1); Defendant Linde's Memorandum of Law in Support of Motion to Transfer Venue ("Ds MOL") (Dkt. No. 20-1). Defendant Linde's Human Resources, Intellectual Property, and Legal Departments are all primarily located in Danbury, Connecticut. Declaration of Amy Nicki Stuckert ¶¶ 4-6 ("Stuckert Decl.").

Plaintiff worked for Defendant Linde, Inc., in its office, located in Tonawanda, New York. Compl. ¶¶ 9-10. Plaintiff began working at Linde in May 2013 as a Development Specialist. Compl. ¶ 11. Plaintiff identified as male at the time Plaintiff was hired. *Id.* Plaintiff received excellent performance reviews and was promoted multiple times, eventually becoming a Technology Expert in January 2021. Compl. ¶¶ 9, 14, 21.

As a Technology Expert, Plaintiff worked exclusively from home and did not physically work in Defendant Linde's Tonawanda facility. Stuckert Decl. ¶ 8. Plaintiff's work was entirely remote, and her team consisted of individuals who worked in Chicago, New Jersey, Connecticut, Germany, and

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

New York. Stuckert Decl. ¶¶ 8-9, 22. The head of her division worked in Connecticut. Stuckert Decl. ¶ 21. Further, she was the primary investigator on projects whose main teams were located throughout the world, including in Australia, Houston, Oklahoma, and Vancouver. Stuckert Decl. ¶ 9.

Beginning in January 2020, Plaintiff became interested in developing energy storage technology using compressed air (hereinafter referred to as " CryoStone"). Compl. ¶ 15. In January 2020, Plaintiff suggested to Dr. Christian Voss, Plaintiff's supervisor at the time who is located in Munich, Germany, that Linde develop Plaintiff's idea. Compl. ¶ 16. Dr. Voss told Plaintiff that Defendant Linde was not interested in the CryoStone project. Compl. ¶ 17. In early 2020, Plaintiff shared her research ideas with the program leads she worked with at the time – Dr. Neil Prosser, located in New York, and Dr. Alexander Alekseev, located in Germany, both of whom confirmed that Defendant Linde was not interested in developing this technology. Compl. ¶ 18; Stuckert Decl. ¶ 23. Plaintiff also disclosed the CryoStone project idea to Ralph Mancini, Linde's Chief Intellectual Property Counsel, who is located in Danbury, Connecticut. Compl. ¶ 47; Stuckert Decl. ¶ 23. When Plaintiff was promoted in early 2021, Plaintiff disclosed the CryoStone project to her new supervisor, Dr. Krish Krishnamurthy, who is located in New Jersey, which included an in-depth cost-effectiveness comparison. Compl. ¶ 23; Declaration of Natalie Henry ¶ 7 ("Henry Decl.") (Dkt. No. 20-4). At other times, Plaintiff disclosed her CryoStone project to Dr. Gartner, located in New York, and to Dr. Makini Byron, located in New Jersey. Compl. ¶¶ 48-49; Henry Decl. ¶ 13. At all times prior to Plaintiff's gender transition, Defendant Linde was kept abreast of Plaintiff's CryoStone project and Defendant Linde had no issue with it.

3

In November 2021, Plaintiff publicly transitioned her gender to female and changed her gender presentation, name, usage, and pronouns. Compl. ¶ 26. Plaintiff requested to Linde's Director of Global, Inclusion, Talent Acquisition, Vanessa Abrahams-John, located in Danbury, Connecticut, among others, that Linde change Plaintiff's name and gender in its system to reflect her legal name and gender. Compl. ¶ 28; Stuckert Decl. ¶ 14. Ms. Abrahams-John told Plaintiff that out of over 40,000 employees world-wide, she was the only openly transgender employee. Compl. ¶ 28. In January 2022, Plaintiff underwent gender confirmation surgery and went on short-term disability. Compl. ¶ 29.

Prior to leaving on disability, Plaintiff's direct supervisor, Dr. Krishnamurthy presented Plaintiff with a bonus and an excellent performance review. Compl. ¶ 30. Shortly thereafter Dr. Krishnamurthy retired, and Dr. Minish Shah, located in New York, became Plaintiff's direct supervisor. Compl. ¶ 30.

Immediately following Plaintiff's public gender transition, Plaintiff's new supervisor began excluding her from projects and her colleagues stopped speaking to her or simply refused to use her new name and pronouns. Compl. ¶¶ 31-32; Stuckert Decl. ¶ 10. Because Plaintiff worked remotely, these discriminatory acts occurred online – with Plaintiff being excluded from zoom meetings, and with team members treating her differently on the zoom meetings she attended. Stuckert Decl. ¶ 10. Most of the team members who Plaintiff contends discriminated against her and refused to us her new name and pronouns and who completely stopped speaking to her were not located in New York, but were based in Australia, Houston, and Oklahoma, among other places. Stuckert Decl. ¶ 10.

4

Plaintiff complained about incidents of harassment from her colleagues and issues with being misgendered to her direct supervisor Dr. Shah multiple times throughout early 2022. Compl. ¶¶ 34-35; Stuckert Decl. ¶ 19. Nothing was done in response. In addition, Plaintiff complained to employees in Defendant Linde's HR department, including to Ms. Abrahams-John (based in Danbury, Connecticut), Ugne Sitarz (based in Chicago, Illinois), Natalie Henry (based in New York), Mila Park (based in Danbury, Connecticut), Marla Berry (based in New York) and David Straus (Linde's Head of Human Resources, based in Danbury, Connecticut). Stuckert Decl. ¶¶ 10-17. Plaintiff also complained about discrimination and retaliation to Sean Durbin, an Executive Vice President for Defendant Linde, who is based in Connecticut. Stuckert Decl. ¶ 17.

Plaintiff proposed to Ms. Abrahams-John, among others, that Plaintiff be allowed to give a presentation to her colleagues about gender transition to build acceptance and understanding but was refused. Compl. ¶ 37; Stuckert Decl. ¶¶ 11, 14, 18-19. Even though Plaintiff had made numerous requests, Defendant Linde refused to change Plaintiff's name and gender in its records for almost a year, which caused Plaintiff to have substantial issues managing her health insurance claim. Compl. ¶¶ 33, 41-42; Stuckert Decl. ¶¶ 11-12, 14, 19.

Over two years after Plaintiff first disclosed her CryoStone project, but only a few months after Plaintiff transitioned her gender, two of Defendant Linde's employees – an HR director from New York, Natalie Henry and an intellectual property attorney from Connecticut, Iurie Schwartz – began investigating Plaintiff in relation to her CryoStone project. Compl. ¶ 43; Henry Decl. ¶ 9; Stuckert ¶ 25. Ms. Henry told Plaintiff that the company had begun investigating Plaintiff in November 2021,

5

which was soon after Plaintiff made her gender transition public, because an anonymous Linde employee had "discovered" Plaintiff's patent and brought it to the company's attention. Compl. ¶ 51. In fact, Plaintiff's patent was only published publicly in December 2021. Compl. ¶ 52.

In May 2022, Joanna Gallagher, a Human Resources employee for Defendant Linde located in Danbury, Connecticut, began harassing Plaintiff about the short-term disability that she took in January 2022 for her gender confirmation surgery, demanding that Plaintiff pay back this disability payment. Compl. ¶ 53; Stuckert Decl.¶ 20. Ms. Gallagher attempted to recoup it from Plaintiff's pay checks. Stuckert Decl. ¶ 20.

On September 29, 2022, Defendant Linde terminated Plaintiff's employment. Compl. ¶ 54; Henry Decl. ¶ 15. Defendant Linde's stated rationale is that Plaintiff's CryoStone project violated the Memorandum of Employment Agreement ("MEA"). Compl ¶ 54; Henry Decl. ¶ 14. Plaintiff contends that this rationale is pre-textual because Plaintiff's patent is based on research and knowledge she attained while pursuing her doctorate degree and she properly disclosed her ideas to Defendant Linde at every step of the way. Compl. ¶¶ 55-56. Plaintiff contends that Defendant Linde's terminated Plaintiff's employment because of Plaintiff's gender identity and because she complained about the discrimination she experienced. Compl. ¶¶ 55-56.

### III.    ARGUMENT

Defendant moves to transfer this action from the District of Connecticut to the Western District of New York pursuant to 28 U.S.C. § 1404.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of

6

justice, a district court may transfer any civil action to any other district of division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether transfer of venue is appropriate, a court asks (1) whether the action "might have been brought" in the proposed transferee forum and, if so, (2) whether the transfer promotes convenience and justice. *See MAK Marketing, Inc. v. Kalapos*, 620 F. Supp. 2d 295, 307 (D. Conn. 2009). Here, Plaintiff does not dispute that the case could have been brought in the proposed transferee district – the Western District of New York.

In determining whether a transfer "promotes convenience and justice," the Court considers various factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quotation marks omitted). The Court also considers the "forum's familiarity with the governing law" and "trial efficiency and the interests of justice based on the totality of the circumstances." *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, No. 22-cv-2538, 2022 U.S. Dist. LEXIS 208985, at *15-16 (S.D.N.Y. Nov. 17, 2022).

This Court has broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Importantly, 28 U.S.C. § 1404(a) does not require that the Court determine what is the *best* venue for this case, it only requires that the Court

7

determine that this is a suitable venue. *See Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (noting that the venue statue does not require the district court to determine the best venue, only a suitable one). And the burden rests on the Defendant to prove, by "clear and convincing evidence," that this venue is not suitable. *See Huntley v. Sprout Foods, Inc.*, Case No. 3:21-cv-00488, 2022 U.S. Dist. LEXIS 7417 at *4 (D. Conn. Jan. 14, 2022) ("[T]he burden is ultimately on the moving party to show by clear and convincing evidence the propriety of a transfer."); *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114 ("Although we have never explicitly approved a district court's use of the 'clear and convincing evidence' standard in ruling on a motion to transfer venue, the propriety of that standard to transfer-motions is evident. We have stated that the party requesting transfer carries the 'burden of making out a strong case for transfer.'").

Here, Defendant has not met its burden of establishing by clear and convincing evidence that the notions of convenience and fairness warrant a transfer from Plaintiff's chosen forum.

### A. Defendant Has Failed to Show By Clear and Convincing Evidence that Transfer of Venue is Warranted

#### 1. Plaintiff's Choice of Forum is Entitled to "Substantial Deference"

Plaintiff's choice of the District of Connecticut as her chosen forum "is entitled to substantial deference." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003). "[U]nder 28 U.S.C. § 1404(a), the plaintiff's choice of forum should not be disturbed unless the balance in the defendant's favor is shown by clear and convincing evidence." *N.Y. Marine*, 599 F.3d at 114 (citation omitted). While it is true that "a plaintiff's choice of forum is given less weight where the case's

operative facts have little connection with the chosen forum," as detailed below, many of the operative facts in this case occurred in this district. *Deithier v. Nat'l Liquidators,* Case No. 3:09-cv-1507, 2010 U.S. Dist. LEXIS 25545 at *13 (D. Conn. Mar. 18, 2010). As discussed below, Defendant fails to demonstrate by clear and convincing evidence that Plaintiff's "choice of forum is trumped by the interests of efficiency and justice." *Saccoccio v. Relin, Goldstein & Crane, LLP*, No. 06-cv-14351, 2007 U.S. Dist. LEXIS 33145, at *6-7 (S.D.N.Y. May 7, 2007). That is, the Court should grant substantial weight to Plaintiff's choice of forum and deny Defendant's motion to transfer.

### 2. The Location of Operative Facts and Events Weighs Against a Transfer

"To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *A Slice of Pie Prods., LLC v. Wayans Bros. Ent.*, 392 F. Supp. 2d 297, 305 (D. Conn. 2005). Notably, "[i]n cases alleging that discriminatory employment practices were coordinated from the corporate headquarters, courts have found that the locus of operative facts is the employer's corporate headquarters." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 30 (S.D.N.Y. 2016); *see e.g., Rimler v. Ripple Junction Design Co.*, No. 19-cv-5953, 2020 U.S. Dist. LEXIS 264681 (E.D.N.Y. Jan. 14, 2020) ("However, as to Plaintiff's discrimination and retaliation claims, the locus is Ohio, because Defendant is headquartered there, and the allegedly discriminatory and retaliatory decisions were made there."); *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 278 (D. Conn. 2006) (finding the locus of operative facts in an employment discrimination case was at the company headquarters because the allegedly discriminatory employment practice occurred there).

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 802702

Here, most of the central operative facts in this case occurred in Connecticut at Defendant's Danbury headquarters. Plaintiff contends, and Defendant Linde does not deny, that the decision to terminate Plaintiff came from Defendant Linde's headquarters in Danbury, Connecticut.[1] Compl. ¶ 8; Stuckert Decl. ¶¶ 4-6. Importantly, the facts making up the central dispute in the case – i.e., whether Defendant fired Plaintiff because of an IP issue or because of discriminatory/retaliatory intent – occurred completely in Connecticut. Defendant's position is that Plaintiff was fired for working on her own IP, in violation of the MEA, and that Defendant investigated Plaintiff and uncovered the violation which led to her termination. *See* Ds MOL at 4. Defendant's Intellectual Property Department is completely based in Danbury, Connecticut, where Mr. Schwartz, the IP attorney that investigated Plaintiff and recommended that Plaintiff be terminated, works. Stuckert Decl. ¶¶ 5, 25; Henry Decl. ¶¶ 9, 14. The pre-text issue in this case is completely a Connecticut issue, and it is the central dispute in the case. That is, all of Plaintiff's alleged disclosures to Linde related to her IP – including Plaintiff's first disclosure to Mr. Mancini, Linde's Head of IP, who works in Connecticut – and Defendant's decision to investigate Plaintiff and the subsequent investigation into her project must be understood to have "occurred" in Connecticut. Stuckert Decl. ¶ 24.

Moreover, Defendants cannot dispute that the specific acts of alleged discrimination beyond Plaintiff's termination, were initiated in Connecticut via Defendant's HR and IP departments. For

---

[1] Defendant does not deny or contradict this allegation. Instead, Defendant's submissions are conspicuously silent as to who made this decision, and where this decision was made. Ms. Henry's declaration simply states that she and Mr. Schwartz "recommended that Plaintiff's employment be terminated" and that later "Linde terminated Plaintiff's employment." Henry Decl. ¶ 14.

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

example, Plaintiff requested to Linde's head of DEI (based in Connecticut) that she be allowed to give a presentation to her colleagues about gender identity, but Defendant refused. Compl. ¶ 37, Stuckert Decl. ¶ 14. In another example, an HR associate working out of Danbury, Connecticut attempted to claw back Plaintiff's short-term disability benefits that she used for her gender conformation surgery. Compl. ¶ 53; Stuckert Decl. ¶ 20. While Plaintiff made some complaints to Ms. Henry and Dr. Shah, who both work in New York, Plaintiff also complained to at least 4 individuals in Connecticut about her discriminatory treatment. Stuckert Decl. ¶¶ 14-17. Plaintiff further complained to HR staff in Connecticut about Defendant Linde failing to update her gender and name on Defendant Linde's employee records – records almost certainly kept and maintained at Defendant Linde's headquarters – which, among other things, caused issues with her medical insurance. Compl. ¶¶ 41-42, Stuckert Decl. ¶ 14. In short, Defendant's HR response (or lack thereof) to both Plaintiff's gender transition and discrimination complaints, was coordinated and directed by individuals in Connecticut.

More generally, as a global company with many employees all over the world, Defendant's collective corporate actions should be understood to have occurred as arising from its headquarters in Danbury, Connecticut. *See Jones*, 463 F. Supp. 2d at 278. For example, Plaintiff disclosed her CryoStone project to individuals in Connecticut, New York, New Jersey, and Germany. Stuckert Decl. ¶ 23. Plaintiff worked with colleagues, team members, and supervisors located in Germany, Australia, Houston, Oklahoma, Vancouver, New Jersey, New York, and Connecticut. Stuckert Decl. ¶¶ 9, 22. Plaintiff alleges discriminatory and retaliatory treatment from Linde employees located in Australia, Houston, Oklahoma, New York, and Connecticut. Stuckert Decl. ¶¶ 9-10, 14, 20. Defendant's HR

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 002702

department was located in Connecticut, with relevant HR employees in New York and Chicago. Stuckert Decl. ¶¶ 4, 13-16. Defendant's IP department was completely located in Connecticut. Stuckert Decl. ¶ 5. Thus, many of the material disclosures, decisions, and interactions in this case occurred between individuals in different locations, communicating via the internet, and the only coherent understanding of such a geographically disparate organization with nodes scattered globally, as it relates to this motion, is to view the corporate decisions arising from these interactions as stemming from Defendant's Corporate headquarters. *See Jones*, 463 F. Supp. 2d at 278 (finding corporate decisions stemmed from corporate headquarters). Defendant Linde is headquartered in Connecticut, and, thus, its collective corporate decisions should be understood to have been made in Connecticut.

Defendant's argument that because Plaintiff lived in New York the location of the operative facts is in New York ignores the reality of Linde's business operations and the nature of Plaintiff's work. During the relevant time period, Plaintiff worked remotely, did not go into the New York office, and collaborated on global projects with international and national teams. Stuckert Decl. ¶ 8. In other words, Plaintiff's work was not centered on Western New York in any real way. Further, the discrimination that Plaintiff experienced and complained about was undertaken by individuals who are geographically disparate, including individuals located in Australia, Houston, Oklahoma, Connecticut, and New York. Stuckert Decl. ¶¶ 9-10 Simply put, the only fact that connects this case to Western New York is that Plaintiff happens to live there. This is insufficient to warrant a transfer. *See e.g., Butcher v. Gerber Prods. Co.*, Case No. 98 Civ. 1819, 1998 U.S. Dist. LEXIS 11869 at *21-22 (S.D.N.Y. July 29, 1998) (transferring case to forum where corporate decisions were made when

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 Center Street • Manchester, CT 06040 • (860)646-5606 • Juris No. 002702

the only connection to Plaintiff's chosen forum was that Plaintiff lived and worked in the district and was affected by Defendant's decisions in the district).

Finally, even though *some* operative facts occurred in New York (because Plaintiff lived in New York and so experienced the discrimination in New York), it does not negate the conclusion that other operative facts *also* occurred in Connecticut, because Defendant's discriminatory actions and decisions – the pre-textual investigation into Plaintiff's business, the retaliatory HR decisions, and the final the decision to fire Plaintiff – occurred in Connecticut. In situations where "the locus of operative facts is split amongst several forums" because the discriminatory decisions were made in one District but experienced by the plaintiff in another, this factor is neutral. *See Kumar v. Opera Solutions OPCO, LLC*, No. 20-cv-6824, 2021 U.S. Dist. LEXIS 185705, at *49-50 (S.D.N.Y. Sept. 28, 2021) (concluding the factor was neutral where defendants sent communications from and engaged in discriminatory conduct in New Jersey but the plaintiff "experienced the significant instances of Defendants' discrimination and her eventual termination in New York").

In sum, the location of operative facts and events factor weighs in favor of this District or, at worst, is neutral. As such, this factor does not reduce the substantial weight of Plaintiff's choice of forum.

### 3.   The Convenience of the Witnesses Weighs Against Transfer

"The convenience of the witnesses is generally considered the most important of the factors a court considers in deciding whether to transfer a case." *Jones* 463 F. Supp. 2d at 274. But "in order to meet its burden, the motion of the party seeking transfer must specifically list the evidence and

13

witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony." *Id.* "When weighing this factor, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *LEGO A/S v. OYO Toys, Inc.*, Case No. 3:19-cv-1610, 2020 U.S. Dist. LEXIS 126185 at *27 (D. Conn. July 17, 2020) (internal citation omitted). "This factor is principally aimed at weighing the relative convenience of *non-party witnesses*." *Id.* (emphasis added).

As an initial matter, Defendant failed to provide the Court with a complete list of witnesses and the subject matter on which these witnesses would testify. At this initial stage, it is common not to know all the witnesses that each party will call. However, this lack of information is precisely why Defendant failed to carry its burden here, and why the Court should deny its motion or, in the alternative, allow Defendant to renew its motion after discovery is complete. *See infra* at 19-21.

To the extent that Defendant suggested what witnesses they believe would be called, Defendant identified only two that reside in the Western District of New York whose testimony Defendant appears to contend is material to this case – Dr. Shah (Plaintiff's last supervisor) and Ms. Henry (an HR director). *See* Ds MOL at 6. Notably, Defendant has not identified a single non-party witness in the Western District of New York. That is, the only two witnesses Defendant identified in that district (i.e., Dr. Shah and Ms. Henry) are employees of Defendant Linde, and thus, their inconvenience does not weigh heavily in favor of transfer. *See Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F.

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

Supp. 2d 356, 364 (E.D.N.Y. 2009) (inconvenience of witnesses who were "employees or agents of the parties in this case . . . does not weigh as heavily as inconvenience to non-party witnesses").

Regardless, there are many more materially significant witnesses in Connecticut. Plaintiff complained about discriminatory and retaliatory treatment to at least four of Defendant's employees (3 HR employees and 1 vice president) who are located in Connecticut. Stuckert Decl. ¶¶ 14-17. Plaintiff alleges that an additional HR employee located in Connecticut was the primary person responsible for Defendant Linde's retaliatory action of clawing back Plaintiff's short-term disability benefits. Stuckert Decl. ¶ 20. Plaintiff has identified two individuals – Ralph Mancini (Chief IP Counsel) and Iurie Schwartz (IP Attorney) – from Defendant Linde's IP department in Connecticut who have material information about Plaintiff's disclosures relating to CyroStone and about the decision to "investigate" Plaintiff and the investigation itself. Compl. ¶ 47; Stuckert Decl. ¶¶ 24-25. These two witnesses are essential to Plaintiff's claims that the reason provided for her termination – violating the MEA – is pretextual. Defendant admits that Mr. Schwartz – based in Connecticut – investigated Plaintiff for the breach of the MEA and then recommended Plaintiff's termination.[2] Henry Decl. ¶ 9.

Moreover, the record before the Court suggests that there are likely many more witnesses in this District who have yet to be identified. As explained above, Plaintiff alleges that the decision to

---

[2] Defendant argues that because Ms. Henry also participated in the investigation and is located in New York, that this weighs in favor of transfer. Ds MOL at 6. Defendant admits that, factually, Mr. Schwartz also participated in the investigation and made the recommendation to terminate Plaintiff, but is, tellingly, silent as to import of Mr. Schwartz's involvement as it relates to the outcome of this motion.

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

terminate her came from Defendant Linde's headquarters in Danbury, Connecticut, which the Defendant's do not deny or contradict. Compl. ¶ 8; Henry Decl. ¶ 14. Plaintiff also alleges, and Defendant's do not deny, that Defendant Linde's HR and IP Departments are primarily located at their headquarters, and thus there are likely individuals who work there with material information regarding Plaintiff's interactions with HR and disclosures regarding IP issues, including the decision makers that denied Plaintiff's request to present about gender identity and that authorized Defendant Linde to attempt to claw-back Plaintiff's short-term disability payments. Compl. ¶¶ 37-53; Stuckert Decl. ¶¶ 4-16, 20. As such, there are certainly more witnesses from Defendant Linde's Connecticut headquarters who have material information regarding this case.

Plaintiff has identified at least 7 specific witnesses that are located in Connecticut and common sense suggests that there are others who worked in Defendant Linde's HR and IP departments who are not yet identified who have material information. To be clear, the parties agree that Plaintiff was not fired because of her work performance. That is, the central dispute in this case hinges on the investigation into Plaintiff's IP, and on how Linde's HR department handled Plaintiff's gender transition and related complaints about discrimination. Both of these issues are Connecticut issues and the witnesses with material information related to these issues are located in Connecticut.

When assessing the § 1404(a) balancing analysis, Courts in this Circuit routinely disregard the convenience of witnesses who do not live in either the transferee or transferor District and thus will have to travel no matter where the trial is held. *See, e.g.*, *Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc.*, No. 07-cv-975, 2007 U.S. Dist. LEXIS 52246, at *14 (S.D.N.Y. July 17, 2007)

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

("Typically . . . district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum.") (citing cases); *Price v. Stossel*, No. 07-cv-11364, 2008 U.S. Dist. LEXIS 45672, at \*12 n.5 (S.D.N.Y. June 4, 2008) (disregarding three witnesses who did not reside in either venue and will "be forced to travel regardless of whether the Court grants or denies the instant motion"). Thus, that Dr. Krishnamurthy, Plaintiff's ex-supervisor and Defendant's ex-employee who lives in New Jersey, does not live or work in Connecticut or the Western District of New York has no bearing on whether to transfer the case.

Even if the Court considers the convenience of witnesses who live outside these two proposed districts (i.e., Dr. Krishnamurthy (New Jersey), Dr. Christina Voss (Munich, Germany), Dr. Byron (New Jersey) (colleagues in Australia and Houston who Plaintiff alleges discriminated against her)), their convenience favors keeping the case in this forum. All of these witnesses are either Defendant's party witnesses, or former or current employees of Defendant Linde, and it is far more convenient for them to come to Connecticut, where the company headquarters is located, and which is near major transportation hubs on the eastern seaboard, than to western New York. *See Payless Shoesource, Inc.*, 666 F. Supp. 2d at 364 (inconvenience of witnesses who were "employees or agents of the parties in this case . . . does not weigh as heavily as inconvenience to non-party witnesses"); *Pilevesky v. SunTrust Bank*, No. 10-cv-2290, 2010 U.S. Dist. LEXIS 124308, at \*9 (E.D.N.Y. Nov. 22, 2010) ("[F]ormer employees are not entitled to the same deference shown to other non-party witnesses, because former employees are more likely to willingly attend than other non-party witnesses." (quotation marks omitted))..

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

In sum, the convenience of the witnesses factor is largely neutral between this District and the Western District of New York.

### 4.  The Location of Relevant Documents Weighs Against Transfer

Defendant correctly states that "the location of documents is less relevant than other factors given the digitization of document storage." D's MOL at 7. *See e.g., Inventel Prods. LLC v. Penn LLC*, No. 16-cv-1649, 2017 U.S. Dist. LEXIS 28933, at *11 (S.D.N.Y. Feb. 28, 2017) ("In today's modern world of electronic documents, the location of relevant documents is a largely neutral factor"). However, to the extent there are physical records, Plaintiff alleges that these records would be kept at Defendant Linde's headquarters in Danbury, Connecticut, where Defendant's Human Resources Department, Intellectual Property Department, and Legal Department are all located. Stuckert Decl. ¶¶ 4-6. As described above, Plaintiff alleges she properly disclosed, over the course of years, her CryoStone project and made complaints regarding her gender transition to individuals in these departments who work in Connecticut. Stuckert ¶¶ 14-17, 23-24. Defendant concedes that Mr. Schwartz, who "investigated" Plaintiff's CryoStone project worked in Connecticut, and Plaintiff alleges that the final decision to terminate Plaintiff was made by decisionmakers in Connecticut, Compl. ¶ 8; Henry Decl. ¶¶ 9, 14, and, thus, any paper records from these interactions or investigations would likely be in Connecticut.

The *only records* that Defendant identifies that may be in New York are Ms. Henry's "notes and records" from her investigation into Plaintiff. D's MOL at 7; Henry Decl. ¶ 9. Notably, there is no evidence in the record as to where Mr. Schwartz, who works in Connecticut, kept his "notes and

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860) 646-5606 • JURIS No. 002702

records" from this investigation, but it is reasonable to presume it is in Connecticut, where he works. Regardless, as Defendant concedes, Ms. Henry's notes can easily be produced and made available for litigation in Connecticut. *See Wistron Neweb Corp.*, 2022 U.S. Dist. LEXIS 208985, at *26 ("[A]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport."). Accordingly, this factor does not favor transfer.

### 5.   The Convenience of the Parties Weighs Against Transfer

Plaintiff's conscious choice to bring her claims in this District shows that it is more convenient for her to attend trial here than in the Western District of New York. *See e.g., In re Grebe Shipping LLC*, 448 F. Supp. 3d 161, 166 (D. Conn. 2020) (noting that the choice of claimants, who live in Texas, to bring their case in Connecticut shows that this forum is convenient for them). Defendant's headquarters and principal place of business is in Danbury, Connecticut. Complaint ¶ 9. Defendant cannot seriously contend that litigating in this forum is not convenient for it. Again, a transfer from Plaintiff's chosen forum is not appropriate where it would only shift the burden of inconvenience from one party to the other. *See Calabrese v. Teoco Corp.*, 637 F. Supp. 2d 160, 163 (E.D.N.Y. 2009). This factor therefore weighs against a transfer.

### 6.   Defendant Fails to Demonstrate that Any Witnesses Would be Unwilling to Testify at Trial Absent a Subpoena

Defendant fails to show that this court lacks the authority to compel the attendance of unwilling witnesses or that any unwilling witnesses could be compelled by the Western District of New York.

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 002702

First, Defendant insinuates that because the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than one hundred miles from the issuing District Court, that the court in the Western District of New York "would be better suited to issue subpoenas for the testimony of witnesses than the District of Connecticut" because "most of the witnesses live in the Western District of New York." Ds MOL at 7. However, Defendant fails to identify a single witness in Western New York that would require a subpoena for their testimony in this case. This is unsurprising because there are none. The only two witnesses that Defendant has identified – Dr. Shah and Ms. Henry – are employees of Defendant and are thus under Defendant's control. *See* Ds MOL at 6. That is, process would not be necessary for them to appear in this case.

The only potential non-party witness identified by Defendant, thus far, is Dr. Krishnamurthy, who lives in New Jersey. Ds MOL at 7. Defendant concedes that this Court would have the same issues as the Western District of New York in compelling Dr. Krishnamurthy's testimony. Ds MOL at 7. As such, transfer is neutral as to this witness.

Nevertheless, Defendant's argument on this issue is completely speculative. Because there is "no indication that any witnesses would refuse to appear, this factor is neutral." *Charles v. Nationwide Mut. Ins. Co.*, No. 09-cv-0094, 2010 U.S. Dist. LEXIS 165337, at *16 (S.D.N.Y. Apr. 1, 2010); *Wistron Neweb Corp.*, 2022 U.S. Dist. LEXIS 208985, at *29-30 ("Nothing has been presented to suggest that any of the non-party witnesses would be unwilling to testify. Therefore, this factor does not enter the Court's analysis." (internal quotation marks omitted)).

20

### 7.  The Relative Means of the Parties is Neutral.

There can be no dispute that there is a clear disparity between the parties in terms of their relative means because Plaintiff is an individual, while Defendant Linde is the United States branch of a global multinational industrial gas and engineering company, which is the world's large industrial gas company by market share and revenue. Compl. ¶ 9. "In analyzing whether the relative means of the parties favors transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." *Travelers Prop. Case. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 383 (W.D.N.Y. 2018) (internal citations omitted).

Here, Defendant, as a multinational energy company, plainly has the means and financial resources to litigate in either forum. Defendant does not argue otherwise. D's MOL at 7-8. This fact weighs against transfer. *See Obourn v. Am. Well. Corp.*, Case No. 3:15-CV-48, 2015 U.S. Dist. LEXIS 141622 at *9 (D. Conn. Oct. 19, 2015) ("The purpose of the relative means factor…is to ensure the interest of justice are accounted for in situations where a disparity exists…such as an individual plaintiff suing a large corporation." (internal citation omitted)). But contrary to Defendant's argument that it would be financially beneficial and easier for Plaintiff to litigate this case in the Western District of New York, Plaintiff chose to bring this case in the District of Connecticut and this choice is clear evidence that it would not burden Plaintiff financially to litigate in this venue. *In re Grebe Shipping LLC*, 448 F. Supp. 3d 161, 166 (D. Conn. 2020) (noting that the choice of claimants, who live in Texas, to bring their case in Connecticut shows that this forum is convenient for them). Thus, this factor is neutral.

21

### 8.  This Court Has Familiarity with the NYSHRL

While Plaintiff brings her claims under the New York State Human Rights Law, this Court has familiarity and experience with this statute. *See e.g., Castelluccio v. IBM*, Case No. 3:09-CV-1145, 2012 U.S. Dist. LEXIS 12522 at *24 (D. Conn. Aug. 21, 2012) (denying summary judgment on NYSHRL claim); *Sacco v. Legg Mason Inv. Counsel & Trust Co., N.A.*, 660 F. Supp. 2d 302, 312 (D. Conn. 2009) (granting summary judgment on NYSHRL claim). Thus, even though "[d]istrict courts are presumed to be more familiar with the law for the state in which they sit," this Court is more than capable of adjudicating Plaintiff's NYSHRL claims. *Costello v. Home Depo U.S.A., Inc.*, 888 F.Supp.2d 258, 269 (D. Conn. 2012). As such, this factor is neutral.

### B.  In The Alternative, The Court Should Allow Defendant to Renew the Motion After Discovery

Based on the record currently before the Court, common sense, and the applicable legal standards, it is clear that the Defendant has failed to carry its burden in showing, by clear and convincing evidence, that a transfer to the Western District of New York is warranted. As such, the Court should deny this motion and the case should proceed to discovery in this venue.

If the Court, however, believes that the development of the factual record would be beneficial for deciding this motion, the Court should deny the motion now and grant Defendant leave to renew the motion once discovery is completed and the factual record fully developed. *See e.g., Sherman v. Moore*, 86 F.R.D. 471, 473-74 (S.D.N.Y. 1980) (transferring case after discovery was "substantially" completed).

22

In the alternative, if the Court were inclined to transfer the case or believes the factual development of the record at this initial stage would aid the Court in deciding this motion, Plaintiff requests that the Court allow the parties to engage in limited venue discovery. When considering motions to change venue courts have the discretion to order limited discovery to ascertain disputed or unknown facts related to the relevant factors. *See e.g., Global Supplies Ny, Inc. v. Electrolux Home Prods., Inc.,* Case No. 19 CV 4823, 2022 U.S. Dist. LEXIS 190461 at *5-7 (E.D.N.Y. Oct. 18, 2022) (denying motion and ordering venue discovery); *RegenLab USA LLC v. Estar Techs. Ltd*, Case No. 16-cv-08771, 2017 U.S. Dist. LEXIS 131627 at *17 (S.D.N.Y. Aug. 17, 2017) (denying motion and ordering venue discovery); *see also, Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, n.13 (1978) ("For example, where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.").

Here, commons sense and Plaintiff's allegations are sufficient to locate the key decisionmakers in this case in Connecticut (in the HR and IP departments). *See supra* at 8-16. However, to the extent there is a dispute about this, limited discovery would allow the parties to specifically identify these decisionmakers, the location of these decisionmakers, and the identity of the records related to the decision-making process. Importantly, Defendant has failed to disclose the identity and location of a key witness. Plaintiff alleges that Ms. Henry informed Plaintiff that Linde had become aware of Plaintiff's CryoStone project in November 2021 because a "Linde employee" had found the public patent, but Plaintiff contends her patent was not public until December 2021. Compl. ¶¶ 51-52. This

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

key witness is material to whether Linde's stated rationale for Plaintiff's termination is pre-textual, and thus, the identity and location of this employee-witness is relevant to the transfer motion.[3]

In sum, should the Court be inclined to transfer this case or believe it needs more information, Plaintiff respectfully requests that the parties be allowed to engage in discovery to provide the Court with a full factual record prior to a ruling.

## IV.   CONCLUSION

In sum, it is Defendant's burden to demonstrate by "clear and convincing evidence" that Plaintiff's chosen form should be disturbed. Defendant has not met that burden. For the foregoing reasons, Defendant's motion to transfer this case pursuant to 28 U.S.C. § 1404(a) should be denied. In the alternative, the Court should deny the motion, but allow Defendant to renew it after full, or limited venue, discovery.

---

[3] Plaintiff contends that it is likely that this employee – who "discovered" Plaintiff's publicly filed patent – works in Defendant Linde's IP department at Defendant's headquarters in Connecticut.

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

Dated: New York, New York

     May 19, 2023

By:    */s/Maimon Kirschenbaum*
        D. Maimon Kirschenbaum
        Michael DiGiulio
        JOSEPH & KIRSCHENBAUM LLP
        32 Broadway, Suite 601
        New York, NY 10004
        (212) 688-5640

        *Attorneys for Plaintiff*
        *Pro Hac Vice*

By:    */s/Marc P. Mercier*
        Marc P. Mercier
        BECK & ELDERGILL, P.C.
        447 Center Street
        Manchester, CT  06040
        (860) 646-5606

        *Attorneys for Plaintiff*

LAW OFFICES
BECK AND ELDERGILL, P.C.
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS NO. 002702

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on May 19, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing

system or by regular first-class mail to counsel or parties unable to accept electronic filing.  Parties

may access this filing through the court's system.

D. Maimon Kirschenbaum
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, NY 10004
Email: maimon@jk-llp.com

Michael DiGiulio
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, NY 10004
Email: maimon@jk-llp.com

Lori B. Alexander
Littler Mendelson, P.C.
One Century Tower, Suite 300
265 Church Street
New Haven, CT  06510
Email: lalexander@littler.com

Matthew W. Beckwith
Littler Mendelson, P.C.
One Century Tower, Suite 300
265 Church Street
New Haven, CT  06510
Email: mbeckwith@littler.com

/s/ *Marc P. Mercier*
Marc P. Mercier

26