**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

AMY NICKI STUCKERT,

    *Plaintiff*,

    v.

LINDE INC.,

    *Defendant*.

No. 3:23cv148(MPS)

**RULING ON MOTION TO TRANSFER VENUE**

Invoking the Court's diversity jurisdiction, Amy Nicki Stuckert brings this action against her former employer, Linde Inc., alleging that Linde discriminated and retaliated against her on the basis of her gender identity in violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* Linde moves to transfer the case to the Western District of New York under 28 U.S.C. § 1404(a). ECF No. 20. For the reasons that follow, the motion is GRANTED.

I.      **Factual Background**

The following facts are taken from the complaint, ECF No. 1, and the exhibits attached to the parties' briefs.

Linde is a multinational industrial gas and engineering company. ECF No. 1 ¶ 9. Its headquarters are located in Danbury, Connecticut. *Id.* Stuckert began working for Linde in 2013 in its Tonawanda, New York office, and at the time, she identified as a male and used the name Nicholas Robert Stuckert. *Id.* ¶¶ 10, 11, 27. She was a subject matter expert in the area of oxygen adsorption. *Id.* ¶ 11. Stuckert worked on projects whose teams were located nationally and internationally. ECF No. 24-1, Stuckert Decl. ¶ 9.

In early 2020, Stuckert became interested in developing energy storage technology that could provide low-cost energy storage possibilities for renewable energy. ECF No. 1 ¶ 15. In January 2020, Stuckert suggested to Christian Voss, her supervisor at the time, who was based in

Germany, that Linde begin developing business in the area of daily energy storage for renewable energy using compressed air. *Id.* ¶ 16; ECF No. 24-1, Stuckert Decl. ¶ 23. Voss told Stuckert that Linde was not interested in either developing short-term energy storage or producing energy using compressed air. ECF No. 1 ¶ 17. Also in early 2020, Stuckert shared her idea for compressed air renewable energy research with the Program Leads she worked with at the time - Neil Prosser in Tonawanda, and Alexander Alekseev in Germany. *Id.* ¶ 18; ECF No. 24-1, Stuckert Decl. ¶¶ 22-23. Prosser and Alekseev confirmed that Linde was not interested in pursuing the use of compressed air for short-term energy storage. ECF No. 1 ¶ 18.

In her personal time, Stuckert worked to develop technology for stand-alone energy storage for renewable energy using compressed air. *Id.* ¶ 19. She created CryoStone LLC ("CryoStone") to own the intellectual property she developed. *Id.* To ensure her CryoStone project did not pose a conflict of interest with Linde, Stuckert made all of the relevant disclosures to Linde that were required of her, including disclosure of her project to Linde's legal department and her supervisors. *Id.* ¶ 20.

In early 2021, Stuckert was promoted to "Technology Expert." *Id.* ¶¶ 21-22. Her role was to evaluate technologies for hydrogen storage owned by external entities and evaluate whether Linde could benefit from collaborating with the external entity that owned the technology. *Id.* ¶ 22. She began reporting to a new supervisor, Dr. Krishnamurthy, who worked in New Jersey, and disclosed her CryoStone project to him. *Id.* ¶ 23; ECF No. 24-1, Stuckert Decl. ¶ 22. Dr. Krishnamurthy asked Stuckert for a comparison of CryoStone's technology with Linde's technology, including a cost-effectiveness comparison. ECF No. 1 ¶ 24. After Stuckert provided this analysis in May 2021, Dr. Krishnamurthy advised Stuckert that they should not evaluate any

similar technologies from external entities because of Linde's lack of interest in that type of energy storage.  *Id.* ¶ 25.

In November 2021, Stuckert publicly transitioned her gender to female and changed her gender presentation, name usage, and pronouns.  *Id.* ¶ 26.  In March 2022, Stuckert legally changed her name to Amy Nicki Stuckert.  *Id.* ¶ 27.  Stuckert requested that Linde change her name and gender in its system to reflect her new legal name and gender. *Id.* ¶ 28.

In January 2022, Stuckert underwent gender confirmation surgery and went on short-term disability for approximately two weeks to recover.  *Id.* ¶ 29.  Just before her surgery and medical leave, Dr. Krishnamurthy retired and Dr. Shah, who worked in Tonawanda, became Stuckert's direct supervisor.  *Id.* ¶ 30; ECF No. 24-1, Stuckert Decl. ¶ 19.  Prior to leaving the company, Dr. Krishnamurthy told Stuckert that she was exceeding expectations, that she was positioned for another promotion, and that her role could be fully remote.  ECF No. 1 ¶ 30.

Immediately following Stuckert's public gender transition, the majority of Stuckert's colleagues stopped speaking with her, and her new supervisor, Dr. Shah, began excluding her from projects.  *Id.* ¶ 31.  Stuckert suddenly began experiencing hostility and tactless insensitivity from her coworkers.  *Id.* ¶ 32.  Many colleagues consistently refused to use her new name and pronouns. *Id.*  Linde refused to change Stuckert's name and gender in its records until just weeks before it terminated her.  *Id.* ¶ 33.  Even then, communications following Stuckert's termination were again addressed to her previous male name. *Id.*  Stuckert reported these incidents to Dr. Shah.  *Id.* ¶ 34. In January 2022, Stuckert told Dr. Shah that her colleagues were treating her differently, and she no longer felt comfortable when she came to the office. *Id.*  In March 2022, Stuckert told Dr. Shah that many of her colleagues were still misgendering her and using her prior name, while others stopped communicating with her completely. *Id.* ¶ 35. Nothing was done in response to Stuckert's

complaints. *Id.* ¶ 36.  She proposed to Linde that she be allowed to give a presentation to her colleagues regarding gender transition to build acceptance and understanding. *Id.* ¶ 37.  Her proposal was denied.  *Id.*

Dr. Shah began excluding Stuckert from meetings concerning one of Stuckert's core projects - a project for which she had previously been recognized and awarded for her outstanding contributions. *Id.* ¶ 38.  When Stuckert complained to Dr. Shah, he feigned ignorance and continued to hold meetings without her.  *Id.* ¶ 39.  From May 2022 through September 2022, Stuckert regularly reported to Dr. Shah that Linde had not updated her name or gender in its system and asked for his support. *Id.* ¶ 40.  Despite her many efforts to effectuate this change, Linde refused to update her information. *Id.* ¶ 41. As a result, Stuckert received communications from Linde, her health insurance provider, and her short-term disability provider that were addressed to her male name. *Id.*

Linde began an investigation into Stuckert's Cryostone project.  In April 2022, Natalie Henry, Human Resources Director in Tonawanda, and Iurie Schwartz, Linde's Head of Intellectual Property located in Linde's Connecticut headquarters, requested a meeting with Stuckert to discuss CryoStone.  *Id.* ¶ 43; ECF No. 24-1, Stuckert Decl. ¶¶ 11, 25.  This was the first time Linde expressed interest in CryoStone since Stuckert disclosed the project in 2020.  ECF No. 1 ¶ 43.

Stuckert had a meeting on May 2, 2022 with Henry and Schwartz during which Schwartz interrogated Stuckert about the CryoStone technology and Stuckert's efforts to disclose the project to Linde in 2020 and 2021.  *Id.* ¶ 45.  Stuckert reported that she had disclosed her idea for the CryoStone technology to Ralph Mancini, Linde's Chief Intellectual Property Counsel; Dr. Gartner, Associate Director of Transformational Research and Development; Dr. Krishnamurthy, her former supervisor; and Makini Byron, another supervisor.  *Id.* ¶¶ 47-49.  Stuckert produced an

email documenting the conversation she had had with Dr. Voss in 2020. *Id.* ¶ 46. Linde did not request any further information from Stuckert after the May 2, 2022 meeting. *Id.* ¶ 50.

In May 2022, Henry told Stuckert that Linde began investigating Stuckert's personal project in November of 2021, soon after she made her gender transition public. *Id.* ¶ 51. Henry claimed that a Linde employee had discovered Stuckert's patent at that time and brought it to Linde's attention. *Id.* In fact, Stuckert's Cryostone patent was only published in December 2021. *Id.* ¶ 52.

While Linde conducted its investigation into Cryostone, it began harassing Stuckert about the short-term disability leave she took after gender confirmation surgery by attempting to recoup payments it had made to her under her short-term disability leave. *Id.* ¶ 53.

According to Linde, Henry and Schwartz determined that Stuckert had breached her Memorandum of Employment Agreement ("MEA") by patenting technology related to knowledge and information obtained in the course and scope of her employment, ECF No. 1 ¶ 54, ECF No. 20-4, Henry Decl. ¶ 14, and had failed to disclose a conflict of interest in violation of Linde's "Code of Business Integrity." *Id.* Henry and Schwartz recommended that Stuckert's employment be terminated. ECF No. 20-4, Henry Decl. ¶ 14. On September 29, 2022, Henry informed Stuckert that her employment was terminated. ECF No. 27-1, Henry Decl. ¶ 12.

Stuckert maintains that the patent was not based on information acquired during her employment and that she disclosed the details of Cryostone and her patent to various Linde personnel. ECF No. 1 ¶¶ 55-56. She claims Linde's reasons were pretextual and that its investigation was in response to Stuckert's gender transition and complaints about harassment in connection with her gender transition. *Id.* ¶¶ 57-58.

## II.      Legal Standard

Under 28 U.S.C. § 1404(a), a district court has discretion to transfer an action to another district court in which it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  The objectives of § 1404(a) are "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "District courts have broad discretion in making determinations of convenience under Section 1404(a),… but the burden is ultimately on the moving party to show by clear and convincing evidence the propriety of a transfer." *Huntley v. Sprout Foods, Inc.*, No. 3:21CV488, 2022 WL 138015, at *2 (D. Conn. Jan. 14, 2022) (internal quotation marks and citations omitted).

"In determining whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is appropriate, district courts engage in a two-part inquiry, asking: (1) whether an action 'might have been brought' in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 266 (D. Conn. 2012) (citations omitted).   In deciding whether transfer promotes convenience and justice, courts generally consider several factors, including

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106-07 (2d Cir. 2006) (quotation marks and citation omitted).   "Courts also consider two additional factors: (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Rest. Supply, LLC v. Pride Mktg. & Procurement, Inc.,* No. 3:16CV1270, 2017

WL 3444677, at *3 (D. Conn. Aug. 10, 2017) (internal quotation marks and citations omitted). "There is no rigid formula for balancing these factors and no single one of them is determinative in what is essentially an equitable task left to the Court's discretion." *Id.*

## III.   Discussion

Linde seeks to transfer this case to the Western District of New York, which encompasses Tonawanda, New York.  There is no dispute that this case could have been brought there. Thus, I must determine, weighing the relevant factors, whether transfer promotes convenience and justice. In this case, the only factor weighing in favor of retaining the action in this Court is Stuckert's choice of forum, and then only slightly, while three factors weigh in favor of transferring the action: (1) the locus of operative facts, (2) convenience of the parties, and (3) the forum's familiarity with the governing law. Therefore, I GRANT the motion to transfer to the Western District of New York.

### 1.      Plaintiff's Choice of Forum

A plaintiff's decision to file an action in a particular forum is generally "entitled to great deference." *Chen v. Arts Nail Putnam Valley Inc.*, No. 1:14-CV-03037, 2017 WL 3017712, at *3 (S.D.N.Y. July 14, 2017).  "However, a plaintiff's choice of forum is accorded substantially less deference when the forum is neither the plaintiff's home nor the place where the operative facts of the action occurred." *Reyes v. Div. of State Police*, No. 23-CV-2284, 2023 WL 8097163, at *5 (S.D.N.Y. Nov. 21, 2023) (internal quotation marks and citations omitted). *See Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003) ("a plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum.") (internal quotation marks and citations omitted); *Brown v. XGEN Pharmaceuticals DJB, Inc.*, No. 22-CV-7294, 2023 WL 8372821, at *2 (E.D.N.Y. Dec. 4, 2023) (finding in employment

discrimination case that "[a]lthough [plaintiff] has chosen to file here, her election carries little weight given that she resides in the Western District [of New York] and worked there exclusively").

Stuckert neither lives nor worked in Connecticut; rather, she lives and worked in New York in the Western District.  ECF No. 1 ¶¶ 7, 10; ECF No. 20-4, Henry Decl. ¶ 5.  As for the operative facts, as set forth below, I find that the events giving rise to Stuckert's claims took place in New York, not Connecticut.  As a result, Stuckert's choice of forum weighs against transfer but only slightly because it is entitled to little weight.

### 2.        Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Charter Oak Fire Ins. Co.*, 294 F. Supp. 2d at 220.  *See Rest. Supply, LLC*, 2017 WL 3444677, at *4 (describing locus of operative facts as a "primary factor").  "A transfer to a district where the key operative events occurred serves the interests of justice." *Schweitzer v. Nevels*, No. 22-CV-6435, 2023 WL 2970899, at *4 (S.D.N.Y. Apr. 17, 2023)(internal quotation marks and citation omitted).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Nova Grp., Inc. v. Universitas Educ., LLC*, No. 3:11CV342, 2011 WL 5570793, at *2 (D. Conn. Nov. 16, 2011) (internal quotation marks and citation omitted).

Notwithstanding that she lived and worked in New York, Stuckert argues that "most of the central operative facts" underlying her employment claims occurred in Connecticut.  ECF No. 24 at 15.  She contends that Linde's proffered reason for her termination - that she filed a patent in violation of her MEA - "is completely a Connecticut issue" because Linde's Intellectual Property department as well as Schwartz, the IP attorney involved in the investigation, and Ralph Mancini,

Linde's Head of IP to whom she allegedly disclosed her research, are located in Linde's Connecticut headquarters.  *Id.* She also points to her interactions with various Human Resources ("HR") personnel in Connecticut regarding her request to give a presentation about gender identity, HR's "attempt[] to clawback" her disability benefits, HR's failure to update her name and gender, and Stuckert's complaints of discrimination and retaliation. ECF No. 24 at 16: ECF No. 24-1, Stuckert Decl. ¶¶ 14-17.

While some events did take place in Connecticut, I find that New York is the location of the operative facts.  Stuckert's complaint asserts two claims – one for employment discrimination and one for retaliation.  According to the complaint, Stuckert worked at Linde's Tonawanda facility, ECF No. 1 ¶ 10, and complained to her supervisor, Dr. Shah, that after her gender transition, "her colleagues [treated] her differently and she no longer felt comfortable when she came to the office." *Id.* ¶ 34.  Although Stuckert subsequently avers in a declaration submitted with her opposition that she "worked remotely and did not physically work in Linde's Tonawanda, New York facility," ECF No. 24-1, Stuckert Decl. ¶ 7,[1] it is undisputed that Dr. Shah, whom Stuckert alleges failed to respond to her complaints and excluded her from important meetings, did physically work at the Tonawanda office. ECF No. 20-4, Henry Decl. ¶ 8.  Stuckert's complaints to Dr. Shah about her treatment, and his alleged failure to respond and his own alleged actions in excluding her from key meetings form the core of the hostile work environment piece of her discrimination claim.  See ECF No. 1 ¶¶ 34-40, 61.  And whether she worked remotely or in the office, Stuckert's employment was based in New York, she felt the effects of the alleged discrimination and retaliation in New York, and she was investigated and ultimately terminated in

---

[1] Linde takes issue with Stuckert's averment.  ECF No. 27 at 2.  According to Henry, at one point during the pandemic, Stuckert did work remotely.  ECF No. 27-1, Henry Decl. ¶ 5.  But after the pandemic, Dr. Shah required employees to return to work on a hybrid schedule, which Stuckert refused to do.  *Id.* ¶ 6.  I need not resolve this issue because it is undisputed that Stuckert worked at and for the Tonawanda office, whether or not she physically did so in the office.

New York.  And Stuckert's legal claims reflect these key facts: Her complaint raises claims arising exclusively under New York law.  I find that the locus of operative facts is the Western District of New York.  *See Hale v. Iancu*, No. 3:19CV1963, 2021 WL 9405460, at *7 (D. Conn. Feb. 23, 2021) (finding Connecticut was the locus of operative facts where Plaintiff "complained of discrimination while working from Connecticut" and "claim[ed] Defendant retaliated against and terminated him discriminatorily while he was living in Connecticut for allegedly subpar work performed in Connecticut"); *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 30 (S.D.N.Y. 2016) ("Here, the Court finds that the operative events giving rise to Plaintiff's allegations occurred in the Northern District of Texas—that is where she was employed; where she complained of pay discrimination; where she was denied promotions and pay raises; where she was given negative performance evaluations; where she took medical leave; where she was investigated; and where she was ultimately terminated.").  This factor weighs heavily in favor of transfer.

### 3.  Convenience of witnesses

"The convenience of witnesses is an important consideration, and has often been described as the single most important § 1404(a) factor." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013).  The moving party "must provide the Court with a specific list of the probable witnesses who will be inconvenienced if required to testify in the present forum" and "make a general statement of what their testimony will cover." *Rest. Supply, LLC*, 2017 WL 3444677, at *5 (internal quotation marks and citations omitted).  "The Court is to assess not just the number of witnesses, but also the materiality of their proposed testimony." *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085, 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014).  In conducting this analysis, "the Court weighs more heavily the convenience of non-party witnesses than party witnesses." *Id.*

Linde argues that its key witnesses - Dr. Shah and Henry - are in New York.  ECF No. 20-1 at 6.  Stuckert responds that the majority of witnesses are in Connecticut, including "at least four of Defendant's employees" to whom she complained about discrimination and retaliation, an HR employee who attempted to recoup benefit payments, Schwartz (who worked with Henry in the investigation) and Mancini, to whom she disclosed her research.  ECF No. 24 at 20; ECF No. 24-1, Stuckert Decl. ¶¶ 14-17, 24-25.  Stuckert suggests that there "are likely many more witnesses in [Connecticut] who have yet to be identified."  ECF No. 24 at 20.  Neither party has identified what the testimony of any witnesses will cover.  I find that this factor is neutral.  Aside from Stuckert, most of the witnesses are affiliated with Linde, and are, therefore, under its control and can be brought to testify in either Connecticut or New York.

### 4.  Availability of Process to Compel Unwilling Witnesses

Neither party argues that it will need to compel witnesses.  As noted, almost all of the witnesses are affiliated with a party, and Linde's former employee, Dr. Krishnamurthy, cannot be compelled to testify in either this District or the Western District of New York because he lives in New Jersey.  This factor therefore is neutral.

### 5.  Location of Documents and Ease of Access to Sources of Proof

The parties both argue that relevant documents exist in their chosen forum.  But "[t]he location of relevant documents has become a largely neutral factor in the modern world of scanning and emailing documents of all sizes with ease." *Penrose v. New York Life Ins. Co*., No. 22 CIV. 2184, 2023 WL 6198249, at *5 (S.D.N.Y. Sept. 22, 2023).  *See Charter Oak Fire Ins.*, 294 F. Supp. 2d at 221 ("photocopying technology and electronic storage deprive this issue of practical or legal weight.")  This factor is neutral.

6.      **Convenience of the Parties**

"Transfer should not merely 'shift the burden of inconvenience from one party to the other.'"  *Costello*, 888 F. Supp. 2d at 268 (quoting *Pitney Bowes v. Nat'l Presort*, 33 F. Supp.2d 130, 132 (D. Conn. 1998)).  Stuckert asserts that it is not inconvenient for her to litigate in a district in which she does not reside.  ECF No. 24 at 24.  Even so, she certainly would not suffer inconvenience from a transfer to the district in which she does reside.  *See Reyes*, 2023 WL 8097163, at *4 ("with regard to the convenience of the parties, Plaintiff would not suffer any inconvenience from a transfer to the Western district, as that is his home district")*; Dumont v. Corr. Corp. of Am.*, No. 14-CV-209, 2016 WL 3129163, at *6 (D. Vt. June 2, 2016) (noting that transfer "may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience").  "The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Dickerson*, 315 F.R.D. at 29 (internal quotation marks and citation omitted).  Although Linde has offices in both the Western District of New York and Connecticut, I find that this factor weighs slightly in favor of transfer because the locus of operative facts is in the Western District of New York, suggesting that Linde's personnel with the most knowledge of the critical facts are there.

7.      **Relative Means of the Parties**

"In analyzing whether the relative means of the parties favors transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 383 (W.D.N.Y. 2018)(internal quotation marks and citations omitted).  Stuckert asserts that there is a "clear disparity" between the parties as to their means, ECF No. 24 at 26, but

maintains that it would "not burden [her] financially to litigate in [Connecticut]." *Id.* However, "a party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *W.P.V. v. United States*, No. 21 CIV. 4436, 2023 WL 1991426, at *7 (S.D.N.Y. Feb. 14, 2023) (internal quotation marks and citation omitted). Stuckert fails to show that litigating this action in her home forum would impose any financial hardship. This factor is neutral.

### 8. The Forum's Familiarity With the Governing Law

Stuckert's claims arise under New York state law. "[F]ederal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State." *Pitney Bowes, Inc. v. Nat'l Presort, Inc*., 33 F. Supp. 2d 130, 132 (D. Conn. 1998). However, because "[d]istrict courts are presumed to be more familiar with the law of the state in which they sit," *Costello*, 888 F. Supp. 2d at 269, this factor favors transfer. *See Allstate Prop. & Cas. Ins. Co. v. Titeflex Corp.*, No. 3:14CV945, 2015 WL 1825918, at *5 (D. Conn. Apr. 22, 2015) (finding this factor favored transfer where plaintiff brought claims under Pennsylvania law). New York's federal courts routinely apply the New York State Human Rights Law in employment cases; Connecticut's do not.

### 9. Trial Efficiency and Interests of Justice

"The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances and relates primarily to issues of judicial economy." *Dynamic Data Techs., LLC v. HTC Corp.,* No. 1:18-CV-10180, 2019 WL 2433549, at *8 (S.D.N.Y. June 11, 2019). "The factor of trial efficiency and interest of justice primarily concerns the benefits of consolidating related cases in a common forum, which are often substantial, because [s]uch consolidation may advance the strong policy interests of achieving efficient pretrial discovery,

13

avoiding duplicative litigation, and avoiding inconsistent results." *Caldaroni v. Noble 3411 Inc.*, No. 17-CV-143, 2017 WL 7279371, at *8 (D. Conn. May 22, 2017) (internal quotation marks and citation omitted).  Neither party has addressed this factor, which does not seem to apply, and so this factor is neutral in this case.

After considering all of the factors discussed above, I find that Linde has made a "clear and convincing showing", *Costello*, 888 F. Supp. 2d at 266, that transfer to the Western District of New York serves the "convenience of parties and witnesses, in the interest of justice." Accordingly, Linde's motion to transfer is granted.

## IV.    CONCLUSION

For the foregoing reasons, Linde's Motion to Transfer Venue (ECF No. 20) is GRANTED. The Clerk is directed to transfer this case to the Western District of New York.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       January 11, 2024

14